DOWAGIAC MFG. CO. v. MINNESOTA MOLINE PLOW CO. et al.

MINNESOTA MOLINE PLOW CO. et al. v. DOWAGIAC MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. September 1, 1902.)

Nos. 1,719, 1,720.

1. PATENTS—INVENTION—NEW COMBINATION OF OLD ELEMENTS.
   Where a new combination of old elements is such that it produces a new mode of operation and a beneficial result, there may be a patentable invention.

2. SAME—INFRINGEMENT—CHANGING FORM OF PARTS IN COMBINATION.
   One does not escape infringement by changing the form of the parts of a patented combination without essentially varying the principle or mode of operation pervading the original invention.

3. SAME—EQUIVALENTS.
   A patentee whose invention is meritorious, although he is not a pioneer, is entitled to a reasonable range of equivalents, measured by the advance he has made over older machines.

4. SAME—GRAIN DRILLS.
   The Hoyt patent, No. 446,230, for an improvement in grain drills consisting of spring pressure rods and means of attaching the same, by which pressure is applied to the shoes, and they are raised from the ground, by means of a lever, was not anticipated and is valid. Claims 1, 2, and 3 *held* infringed by a device designated as the "McSherry Old Structure"; also *held* infringed by the "McSherry New Structure," made in accordance with the Swope and Moehring patent, No. 668,397.
   Thayer, Circuit Judge, dissenting as to the latter holding.

Appeal from the Circuit Court of the United States for the District of Minnesota.

Fred. L. Chappell, for plaintiff.

Charles M. Peck and Arthur Stem (George Heidman and Clarence E. Mehlhope, on the brief), for defendants.

Before SANBORN and THAYER, Circuit Judges, and CARLAND, District Judge.

CARLAND, District Judge. This action was brought in the court below by the Dowagiac Manufacturing Company against the Minnesota Moline Plow Company and others, for the alleged infringement of claims 1, 2, and 3 of letters patent No. 446,230, issued February 10, 1891, to Will F. Hoyt. Two structures are involved in the suit, and are referred to in the record as the "McSherry Old Structure" and "Defendant's Second Structure." The circuit court held the McSherry old structure to be an infringement, and the second structure not to be an infringement. The Dowagiac Manufacturing Company has appealed from so much of the decree as adjudged the second structure not to be an infringement, and the Minnesota Moline Plow Company and others have appealed from so much of the decree as adjudged the McSherry old structure to be an infringement.

To defeat the claims of the Dowagiac Manufacturing Company, the Minnesota Moline Plow Company and others plead the invalidity of the Hoyt patent and no infringement. The patent in suit is for an improvement in grain drills. Claims 1, 2, and 3 of the patent are as follows:

"(1) In combination with the transporting wheels and frame, the hopper, shoe, and draft rods, the latter having a pivotal connection with the frame, the clamping plates having a pivotal connection with the draft rods, the spring-metal pressure rods attached to said plates, said rods extending rearwardly of the hopper, the forked arm coupled to said rods, and means for raising and lowering said arm, substantially as specified.

"(2) In combination with a frame of a grain drill, the hopper having a flange at the upper end, the shoe attached to the hopper, the curved draft rods leading from the shoe and having a pivotal connection with the frame of the machine, a swinging head located between the upper ends of the draft rods, spring-metal rods attached to the swinging head, said rods extending back of the hopper and below the flange thereof, said spring-metal rods being coupled to an arm, said arm having means for raising and lowering it, and means for locking the parts, for the purposes set forth.

"(3) In combination with the frame, hopper, shoe, and draft rods, the plates pivotally attached between the upper portions of said draft rods, said plates having the horizontal shoulders, said shoulders bearing upon the draft rods, the spring-metal rods attached to said plates and passing rearward of and on opposite faces of the hopper, and means for applying pressure to the rear ends of said spring-metal rods, for the purpose specified."

Fig. 1 of the patent is an end elevation of the drill, with one of the transporting wheels removed and showing the frame broken away. Fig. 2 is a perspective view of a portion of the drill embodying the improvements of the patent. The first three claims do not cover the press wheel attachment. Figs. 1 and 2 of the patent are as follows:

The McSherry old structure is illustrated as follows:

*McSherry, Old Structure.*

"Defendant's Second Structure" is a patented structure under letters patent No. 668,397, issued to Swope and Moehring February 19, 1901. Fig. 1 of this patent is a side elevation of a grain drill, partly in section and with the near wheel removed. Fig. 2 is an enlarged broken side elevation of the spring pressure and lifting mechanism as applied to the boot and runner of the drill. Fig. 4 is an enlarged detail side elevation of the forward connecting yoke for the spring rods and pressure arm. Figs. 1, 2, and 4 of the Swope and Moehring patent are as follows:

*Fig. 1.*

*Fig. 2.*

*Fig. 4.*

The function of the device in the Hoyt patent was to control the depth of the cut of the shoe by a regular pressure easily exerted by means of a lever, and by the same means to regulate the shoe in uneven ground, and to raise the shoe from the ground when not in use. The principle of the combination was old. The result attained old. But the means by which this principle was energized and this result attained were new. Moore in 1861 (patent No. 31,819) disclosed the principle, but used a flat spring lying upon the drawbar, one end of which was fastened to it, while the other was secured to a lever which operated the pressure; Santrock (patent No. 263,434, issued August 29, 1882) applied a single regulated spring to the drawbars for this purpose, one end of which was attached to the bars, while the other was fastened to a chain, which, after passing around a roller, was attached to a standard, which connected itself with the drawbar at the rear of the shoe; Carter (patent No. 57,862, September 11, 1866, and No. 284,376, September 4, 1883) disclosed a spring attached to the shoe operated by a rock bar lever, so as to press the shoe into the ground at will; while Elam & Boggs (No. 268,361, November 28, 1882) used a coiled spring upon a rod to perform the same service. There were many other patents disclosing this principle, but those which have been mentioned approach nearest to the combination in suit. No one of them discloses the device or combination of Hoyt, or anything near enough to it to take his improvement out of the category of inventions and relegate it to that of mechanical skill. While it is true that the mere bringing together of old elements found in older machines of the same or a kindred art, to perform the same functions and to effect the same mechanical result, does not constitute patentable invention, still, where a new organization of old elements is such that it produces a new mode of operation and a beneficial result, there may be a patentable invention. 1 Rob. Pat. § 155, note 4; Dowagiac Mfg. Co. v. Superior Drill Co. (C. C. A.) 115 Fed. 886. The testimony shows that the public by large purchases appreciated Hoyt's device; and, while this fact is not controlling, it is entitled to consideration, when commercial success is not shown to be due to other causes. Gandy v. Belting Co., 143 U. S. 587, 12 Sup. Ct. 598, 36 L. Ed. 272; Lane v. Welds, 39 C. C. A. 528, 99 Fed. 286; Dowagiac Mfg. Co. v. Superior Drill Co. (C. C. A.) 115 Fed. 886. We are clearly of the opinion that the Hoyt patent is valid.

We have now to consider (1) whether the claims of the patent in suit are infringed by the "McSherry Old Structure"; (2) whether they are infringed by "Defendants' New Structure."

The McSherry old structure consists of the spring pressure rods, which, by means of an eye formed on the forward end of each rod, are adapted to receive a bolt which passes through the draft rods near their upper ends; the bolt forming the pivotal connection between the spring pressure rods and the draw bars. Pivoted on the same bolt is a plate having lugs formed upon it, which lie between the spring pressure rods and the drawbars, and engage the latter, thereby transmitting the pressure of the spring rods to the shoe through the drawbars. The spring rods extend from their pivotal connection on either

side of, in contact with, and below the flange of the boot. This structure does not contain the clamping plates which constitute a part of the swinging head described in the Hoyt patent. Defendants invoke the principle that the absence from a combination of old devices of a single element is fatal to the claim of infringement. This principle, however, is qualified by another principle, which is that the absent element must be an essential one, and that the substitute for it must not be a mechanical equivalent for it. Now, the clamping plates which constitute a part of the swinging head, pivoted to the frame in Hoyt's patent, were essential only for the purpose of forming the pivotal connection with the frame and the bearings upon the drawbars, furnished by the lugs attached to them. The defendants' McSherry old structure secures the pivotal connections directly to the spring rods, instead of through the swinging head, and obtains the bearings upon the drawbars by the use of a stationary plate with lugs upon it. These are the plain equivalents of the swinging head and its pivotal connection. There seems to be no doubt that the McSherry old structure infringes the claims of the patent in suit. If there was a doubt, however, we should, upon principle of comity, affirm the decree below on this point, as the circuit court of appeals of the Sixth circuit, in the case of McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716, held this structure infringed the claims of the Hoyt patent.

The real question in the case is whether the defendants' new structure infringes the Hoyt patent. In this new structure the spring pressure rods are pivoted to the frame by slots in their ends, which embrace a bolt between the drawbars at their forward end, and extend from this pivotal connection on either side of the boot, where they are connected with a forked arm or lever, which operates in the same way as the spring rods in the device of the Hoyt patent. A separate bar of iron is pivoted to a bolt between the drawbars at their forward end, and extends back to the boot, where it is attached to a wing formed in front of the boot. The spring rods are provided with lugs on the inside, which engage with this third bar when they are pressed down, and this bar, through its connection with the boot, communicates this pressure to the boot and to the drawbars below. This device appears to us to be a plain modification of the combination and device of complainant's, whereby defendants seek to utilize every essential element of that combination. The essential elements of complainant's combination were (1) the spring rods; (2) their pivotal connection in front of the frame of the machine; (3) their connection in the rear to a lever, which would operate them; (4) their bearing, whereby the pressure resulting from forcing them down was communicated to the boot, and the drawbars. The defendants in their new structure used the spring rods. The method of pivoting the rods to the bolt in front by slots in their ends, instead of eyes, was the mechanical equivalent of Hoyt's method. The third rod and the lugs upon the spring rods are the mechanical equivalents of the spring head and the lugs upon that. They accomplish the same purpose by plainly equivalent mechanical means. The third rod, tied to the boot, with

the lugs bearing upon it, is the mechanical equivalent of the drawbars with the lugs bearing upon them. It accomplishes the same purpose by the same mechanical means, lugs upon a bar, and the change in construction is nothing but a mere variation produced by mechanical skill, and inspired by a desire to utilize the invention of complainants, without compensation. This question of mechanical equivalents is often well determined by considering whether the infringement is nearer to the patent in suit in its construction and means than those devices which are claimed to anticipate the patent. When this test is applied, it is perfectly plain that the new structure of the defendants more closely imitates the means used by Hoyt to accomplish the desired purpose, than anything found in the art prior to the patent to Hoyt. There is nothing in the prior art that comes anywhere near so close to an imitation of the complainant's combination. Indeed, it is very plain that defendants' new structure would never have existed, if Hoyt had not taught how to make it. It not only operates the principle in the same way that Hoyt did, but it uses plain mechanical equivalents for every essential element of Hoyt's combination. The fact that defendants' new structure is patented does not relieve them from infringement. Clough v. Barker, 106 U. S. 166, 27 L. Ed. 134; Consolidated Safety-Valve Co. v. Crosby Steam Gauge & Valve Co., 113 U. S. 157, 5 Sup. Ct. 513, 28 L. Ed. 939. By changing the form of the parts of complainant's combination, and not essentially varying the principle or mode of operation pervading the original invention, defendants cannot escape infringement. Dowagiac Mfg. Co. v. Superior Drill Co. (C. C. A.) 115 Fed. 886; Cochrane v. Deener, 94 U. S. 787–789, 24 L. Ed. 139; Morey v. Lockwood, 8 Wall. 230, 19 L. Ed. 339; Elizabeth v. Pavement Co., 97 U. S. 126, 137, 24 L. Ed. 1000; Loom Co. v. Higgins, 105 U. S. 585, 26 L. Ed. 1177; Penfield v. Chambers Bros. Co., 92 Fed. 630, 34 C. C. A. 579; Bundy Mfg. Co. v. Detroit Time-Register Co., 94 Fed. 524, 36 C. C. A. 375; Ax Co. v. Hubbard, 97 Fed. 795, 38 C. C. A. 423; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 101 Fed. 716, 721, 41 C. C. A. 627; Taylor v. Spindle Co., 75 Fed. 301, 22 C. C. A. 203; National Hollow Brake-Beam Co. v. Interchangeable Brake-Beam Co., 106 Fed. 693, 707, 45 C. C. A. 544.

It is suggested that to hold that defendants' new structure infringes the claims of Hoyt's patent would extend the claims to an unwarranted degree. Hoyt, it is true, was not a pioneer; but, his invention being meritorious, he is not cut off from a reasonable range of equivalents, measured by the advance he has made over older machines. Bundy Mfg. Co. v. Detroit Time-Register Co., 36 C. C. A. 375, 94 Fed. 524; McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716; Penfield v. Chambers Bros. Co., 34 C. C. A. 579, 92 Fed. 639; McCormick Harvesting Mach. Co. v. Aultman, Miller & Co., 16 C. C. A. 259, 69 Fed. 371; Muller v. Tool Co., 23 C. C. A. 357, 77 Fed. 621.

The decree below should be modified, so as to charge defendants with infringement by their second structure, and, as thus modified, affirmed.

THAYER, Circuit Judge (dissenting).   I agree with my associates that, in view of the decision by the circuit court of appeals for the Sixth circuit in the case of McSherry Mfg. Co. v. Dowagiac Mfg. Co., 41 C. C. A. 627, 101 Fed. 716, we should resolve such doubts as arise over the question whether the McSherry old structure infringes claims 1, 2, and 3 of Hoyt's patent No. 446,230, in favor of the Dowagiac Manufacturing Company; holding, on the strength of that decision and on grounds of comity that it does infringe.   If the question was one of first impression, serious doubts would unavoidably arise as to whether the former structure infringed the latter, because Hoyt's patent, confessedly, does not cover a pioneer invention, but merely a new combination of old elements to accomplish a result which had previously been accomplished, and because, in the first three claims of his patent, Hoyt specifically claimed the clamping plates, PP', as an integral part of his combination, whereas the clamping plates, as such, are not found in the McSherry old structure. Nevertheless, as there is a marked similarity between the McSherry old structure and the Hoyt device, I am willing to concede, on the strength of the decision in the Sixth circuit, that Hoyt's method of pivoting the spring pressure rods to the bolt, which passes through the forward end of the draft rods, H, by means of the clamping plates, is not so essentially different from the method in which the spring rods of the McSherry old structure are pivoted to the same bolt as to free the latter structure from the charge of infringement. In other words, I am willing to concede that the equivalent of the clamping plates is found in the McSherry old structure.

While making this concession in deference to the decision in the Sixth circuit, I discover no sufficient reasons for holding that the McSherry new structure, with which we are chiefly concerned in the case in hand, infringes the Hoyt patent.   The McSherry new structure not only dispenses with the clamping plates, but it employs an additional bar, by which the pressure on the spring rods is transmitted backward to the boot, and through that directly to the shoe.   In the new structure the pressure of the spring rods is not upon the forward end of the draft rods, as in the Hoyt device and in the McSherry old structure; but the pressure is applied directly to the boot by the use of an additional bar.   In the McSherry new structure no connection exists between the spring pressure bars and the draft rods. The mode of applying pressure to the shoe is essentially different from the method employed by Hoyt.   The differences existing between the Hoyt device and the McSherry new device are so marked that the new structure cannot, in my opinion, be held to be an infringement of the Hoyt patent, unless we give to the claims of that patent a broader scope than they are entitled to in view of the state of the art.   When the Hoyt patent was issued, what are termed "shoe drills" were in common use, and various means had been employed by the manufacturers of such drills for applying pressure to the shoes, and for elevating them when the operator desired to do so.   The problem involved, in constructing convenient mechanism to depress and lift the shoe, would not seem to have been difficult or beyond

the reach of ordinary mechanical skill. The prior art shows various contrivances to accomplish this end, as in the Packham patent, No. 410,436, the Elam patent, No. 352,512, the Carter patent, No. 284,-376, and the Santrock patent, No. 263,434, in all of which patents devices are disclosed for depressing and elevating the shoe by means of a lever within reach of the operator. Hoyt was not the first person to devise means for depressing and elevating the shoe. Others had done so with ordinary success. Besides, the fact that the McSherry new structure is made in accordance with letters patent No. 668,397, issued to Swope & Moehring, assignors to the McSherry Manufacturing Company, which patent was granted subsequent to the issuance of the Hoyt patent, shows that the officials of the patent office found enough of novelty in the McSherry new structure to differentiate it from the combination covered by the first, second, and third claims of the Hoyt patent. This latter consideration is not controlling; but it should be given some weight in a case like the one in hand, where the issue as to infringement is at least involved in grave doubt. The manner in which the doctrine of mechanical equivalents has been applied by my associates, to reach the conclusion that the McSherry new structure infringes Hoyt's patent, will, in my opinion, enable the owners of that patent to claim a monopoly of all devices in which spring press rods, pivoted to the forward end of a grain drill and actuated by a lever, are used to depress or elevate the shoes of the drill. I am satisfied that the patent in question is not of a kind which entitles it to such a broad construction. In view of the state of the art and the limited character of the claims, Hoyt should be confined quite closely to the combination of parts which he has described and claimed, thus restricting the monopoly within reasonable bounds. I concur in the views expressed by the learned judge of the circuit court, and think that his decree should be in all respects affirmed.